IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK W. GRIMES          :
                        :
                        :
    v.                  :    Civil No. CCB-13-935
                        :
                        :
PATRICK DUNNIGAN, et al. :

**MEMORANDUM**

Plaintiff Mark Grimes ("Mr. Grimes") brings this action against Defendants Patrick Dunnigan ("Mr. Dunnigan") and Heidi Long ("Ms. Long"), Mr. Dunnigan's employer, asserting claims arising out of an incident in which Mr. Dunnigan allegedly assaulted Mr. Grimes while Mr. Grimes was performing work for Ms. Long's company. Now pending before the court is a motion to dismiss or, in the alternative, for summary judgment, filed by Ms. Long against Mr. Grimes. The issues in this case have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, Ms. Long's motion to dismiss, construed as a motion for summary judgment as to Count IV, will be denied. The motion to dismiss will be granted as to Count III.

**BACKGROUND**

Mark Grimes began working with Pennwood Shows in 2010.[1] Pennwood Shows is owned and operated by Heidi Long and provides carnival rides, attractions and amusements, and carnival equipment for local county and private carnivals, fairs, and bazaars in the mid-Atlantic area, included in Maryland. On September 14, 2011, Mr. Grimes was parking Ms. Long's house trailer at the fairgrounds in Charles County, Maryland when Patrick Dunnigan, an employee of

---

[1] Ms. Long asserts that Mr. Grimes was her independent contractor and not her employee. (Long Aff., ECF No. 8, Ex. 1, ¶ 10.)

1

Ms. Long who was nearby eating dinner with other carnival workers, attempted to direct Mr. Grimes into the parking space.[2] A heated verbal exchange between the two men ensued. Mr. Grimes exited his vehicle and approached Mr. Dunnigan. Shortly thereafter, Mr. Dunnigan struck Mr. Grimes several times, knocking him to the ground.

On September 13, 2012, Mr. Grimes filed suit in Baltimore City Circuit Court against Mr. Dunnigan and Ms. Long, trading as Pennwood Shows. Mr. Grimes alleges assault and battery against Mr. Dunnigan and respondeat superior and negligence against Ms. Long. On March 27, 2013, the action was removed to this court on the grounds of diversity of citizenship, pursuant to 28 U.S.C. §§ 1332 and 1446.[3] On April 3, 2013, Ms. Long filed a motion to dismiss or, in the alternative, for summary judgment.

## ANALYSIS

**Standard of Review**

This case comes before the court on a motion to dismiss pursuant to Rule 12(b)(6), or, in the alternative, for summary judgment. "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are

---

[2] Ms. Long claims that Mr. Dunnigan was off duty on September 14, 2011, when the alleged assault occurred. (Long Aff., ECF No. 8, Ex. 1, ¶ 12.)

[3] Mr. Grimes is a resident of Maryland and Ms. Long and Mr. Dunnigan are Pennsylvania residents. Mr. Grimes seeks relief in excess of $75,000.

2

substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Where matters outside the pleadings are considered by the court, a defendant's motion to dismiss will be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d); *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985). Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

**Discussion**

*Choice of law*

A court sitting in a diversity case must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). Despite a modern trend favoring alternative approaches, "Maryland adheres to the *lex loci delicti* rule" to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 752 A.2d 200, 230 (2000); *see also Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 651 (2007) ("We see no reason to discontinue our adherence to the principles of *lex loci delicti*."). Under this rule, "the substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207, 1209 (1983). Because the alleged torts took place in Charles County, Maryland, Maryland law governs Mr. Grimes's claims.

*Respondeat superior*

"'Under the doctrine of respondeat superior, an employer is jointly and severally liable for the torts committed by an employee acting within the scope of his employment.'" *Baltimore

4

*Police Dep't v. Cherkes*, 140 Md. App. 282, 780 A.2d 410, 439 (2001) (quoting *S. Mgmt. Corp. v. Taha*, 137 Md. App. 697, 769 A.2d 962, 974-75 (2001)); *see also Tall v. Bd. of Sch. Comm'rs of Baltimore City*, 120 Md. App. 236, 706 A.2d 659, 667 (1998). "'An employee's tortious conduct is considered within the scope of employment when the conduct is in furtherance of the business of the employer and is authorized by the employer.'" *Cherkes*, 780 A.2d at 439 (quoting *Tall*, 706 A.2d at 667).

Courts consider several factors in determining whether conduct was within the scope of employment. In *Sawyer v. Humphries*, the Maryland Court of Appeals explained:

> [t]o be within the scope of the employment the conduct must be of the kind the [employee] is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the [employer].

322 Md. 247, 587 A.2d 467, 471 (1991) (quoting *E. Coast Freight Lines v. Mayor and City Council of Baltimore*, 190 Md. 256, 58 A.2d 290, 304 (1948)) (internal quotation marks omitted). "[W]here an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment." *Id.* Furthermore, "where the conduct of the [employee] is unprovoked, highly unusual, and quite outrageous, courts tend to hold that this in itself is sufficient to indicate that the motive was a purely personal one and the conduct outside the scope of employment." *Id.* at 471-72 (internal quotation marks omitted).

Turning to the present case, Mr. Grimes alleges that Mr. Dunnigan "menacingly approached [him]" and "without provocation, violently punched [him] in the face and otherwise physically assaulted him." (Compl., ECF No. 2, ¶ 4). Even assuming Mr. Dunnigan was "on

5

duty" when the incident occurred, his actions were not "of the kind" he was employed to perform and were not "actuated at least in part" to serve Ms. Long. *Sawyer*, 587 A.2d at 471. Rather, Mr. Grimes's allegations make clear that Mr. Dunnigan acted suddenly, recklessly, and without provocation. In other words, Mr. Dunnigan's conduct was "unprovoked, highly unusual, and quite outrageous," and thus outside the scope of his employment. *See id.* (off-duty police officer who threw rocks and assaulted motorist acted for personal reasons and not in furtherance of his employer's law enforcement function); *Tall*, 706 A.2d at 671-72 (teacher's assault of disabled child was so extreme and beyond the bounds of appropriate behavior that it could not be considered to have been in furtherance of school board's objective of educating disabled children); *Jordan v. W. Distrib. Co.*, 286 F. Supp. 2d 545, 549-50 (D. Md. 2003) *aff'd*, 135 F. App'x 582 (4th Cir. 2005) (driver and security guard of truck transporting currency who attempted to run motorist off the road and aimed shotgun at him were not acting with the purpose of serving their employer). Accordingly, Mr. Grimes's respondeat superior claim fails and Count III of the complaint will be dismissed.

*Negligence*

Under Maryland law,

> [i]n order to prove a cause of action for either negligent hiring, supervision or retention, the Plaintiff must establish that her injury was caused by the tortious conduct of a coworker, that the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the Plaintiff's injuries.

*Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996). In a negligent hiring claim, "there is a rebuttable presumption that an employer uses due care in hiring an employee." *Evans v. Morsell*, 284 Md. 160, 395 A.2d 480, 483 (1978). In cases

involving intentional torts committed by employees, "[a] critical standard is whether the employer knew or should have known that the individual was potentially dangerous." *Id.*

In this case, Mr. Grimes has sufficiently alleged that Mr. Dunnigan was Ms. Long's employee and that he was responsible for Mr. Grimes's injuries. He next must show that Ms. Long "had or should have had knowledge of [Mr. Dunnigan's] conduct or general character which would have caused a prudent employer in these circumstances to have taken action." *Bryant*, 923 F. Supp. at 751.

A similar analysis applies to the issue of whether Ms. Long's actions were the proximate cause of Mr. Grimes's injuries. "The element of proximate cause is satisfied if the negligence is 1) a cause in fact of the injury and 2) a legally cognizable cause." *Yonce v. SmithKline Beecham Clinical Laboratories, Inc.*, 111 Md. App. 124, 680 A.2d 569, 575 (1996) (quoting *Balt. Gas & Elec. Co. v. Lane*, 338 Md. 34, 51, 656 A.2d 307 (1995)) (internal quotation marks omitted). Causation in fact exists when the injury would not have occurred in the absence of the defendant's negligent act.[4] *Id.* "If causation in fact exists, a defendant will not be relieved from liability for an injury if, at the time of the defendant's negligent act, the defendant should have foreseen the 'general field of danger,' not necessarily the specific kind of harm to which the injured party would be subjected as a result of the defendant's negligence." *Yonce*, 680 A.2d at 576 (quoting *Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 337, 624 A.2d 496 (1993)). Here, a jury could conclude that, but for Ms. Long's negligent hiring and retention of Mr. Dunnigan, the assault against Mr. Grimes at the Charles County Fairgrounds would not have occurred. Thus, the key issue in determining Ms. Long's liability is whether Mr. Dunnigan's conduct was foreseeable to Ms. Long.

---

[4] This is known as the "but for" test of causation in fact. *Yonce*, 680 A.2d at 575.

To establish the foreseeability of a particular harm, a plaintiff must present facts showing that "a person of ordinary prudence should realize that the condition of which he or she has notice[] enhances the likelihood that the harm will occur." *Hemmings v. Pelham Wood Ltd. Liab. P'ship*, 375 Md. 522, 826 A.2d 443, 454 (2003). Here, Mr. Grimes has established a genuine dispute of material fact as to whether Ms. Long knew or should have known that Mr. Dunnigan was "potentially dangerous." *Evans*, 395 A.2d at 483. Mr. Grimes has presented this court with an affidavit from J. Gregory Hannigan, an attorney and personal acquaintance of Ms. Long, which states that Mr. Dunnigan had assaulted a co-employee and routinely consumed alcoholic beverages while working for Pennwood. (Hannigan Aff., ECF No. 13, Ex. 2, ¶ 4.) Mr. Hannigan asserts that he personally contacted Ms. Long and told her that Mr. Dunnigan had violent propensities and that his continued employment by Pennwood posed a risk of injury to co-workers and the public. (*Id.* at ¶ 7.) Mr. Hannigan claims he conveyed this information to Ms. Long before Mr. Dunnigan's alleged assault on Mr. Grimes. (*Id.* at ¶ 8.) In addition, Mr. Grimes avers in an affidavit that he was a passenger in Ms. Long's car when she drove Mr. Dunnigan to a Pennsylvania correctional institution after a weekend furlough, and thus Ms. Long knew that Mr. Dunnigan was an ex-convict on parole. (Grimes Aff., ECF No. 13, Ex. 1, ¶¶ 13-15.) According to Mr. Grimes, Mr. Dunnigan's criminal record included assaulting a police officer. (*Id.* at ¶ 16.) Mr. Grimes also claims in his affidavit that Ms. Long was made aware of an earlier incident in which Mr. Dunnigan assaulted a co-employee while working for Pennwood. (*Id.* at ¶ 17.) Although Ms. Long asserts by affidavit that she "[has] not experienced any problems with [Mr. Dunnigan]" since he began working for her (Long Aff., ECF No. 8, Ex. 1, ¶ 6.), she does not contest Mr. Hannigan's or Mr. Grimes's assertions about Mr. Dunnigan's past conduct. A reasonable juror therefore could conclude from this evidence that Mr. Dunnigan's assault on Mr.

Grimes was foreseeable. Because a genuine factual dispute exists as to what Ms. Long knew or should have known about Mr. Dunnigan's propensity for violent conduct, Ms. Long's motion to dismiss or for summary judgment on Count IV will be denied.

      A separate Order follows.

<u>July 2, 2013</u>                                                                   <u>/s/</u>
Date                                                                            Catherine C. Blake
                                                                               United States District Judge